SENTENCIA
Nos corresponde analizar si el Departamento de Salud cumplió con las normas y el procedimiento establecido por ley al cesantear a sus empleados por la privatización de las instalaciones médico-hospitalarias del Estado, por virtud de la Reforma del Sistema de Salud de Puerto Rico.(1)
Por entender que el Tribunal de Apelaciones erró al modificar la resolución de la Comisión Apelativa del Servicio Público (CASP) para ordenar la reinstalación de los empleados cesanteados, se modifica la sentencia recurrida y se *29 ordena la devolución del caso a CASP para que calcule la paga atrasada que los empleados cesanteados dejaron de percibir, en cumplimiento con la norma expuesta en Hernández v. Mun. de Aguadilla, 154 DPR 199, 210 (2001), desde que ocurrió la cesantía ilegal de cada empleado hasta la fecha en que se vendió el último centro u hospital del Departamento. Pasemos, pues, a exponer los hechos que dieron origen a la controversia planteada en el caso de epígrafe.
I
La Sra. Maggie Acevedo Sepúlveda y otros recurridos (recurridos) ocuparon puestos regulares de carrera en el Hospital Regional de Ponce y en el Centro Médico de Mayagüez. Durante 1999, el Departamento de Salud (Departamento) comenzó la privatización de algunas unidades del sistema de salud. Así las cosas, los recurridos fueron cesanteados.
Ante esta situación, el 20 de julio de 2000, los recurridos que laboraron en el Hospital Regional de Ponce presentaron una apelación ante la extinta Junta de Apelaciones del Sistema de Administración de Personal (JASAP).(2) Alegaron que, mediante una comunicación notificada el 31 de mayo de 2000, la entonces Secretaria de Salud y Directora Ejecutiva de la Administración de Facilidades y Servicios de Salud (AFASS), Dra. Carmen Feliciano de Melecio, les notificó que quedarían cesanteados el 30 de junio de 2000. Igualmente, los recurridos que trabajaron en el Centro Médico de Mayagüez alegaron que la carta de cesantía que *30 recibieron indicaba que serían cesanteados el 15 de octubre de 2000.(3)
En su apelación, los recurridos argüyeron que AFASS decretó las cesantías sin cumplir con la legislación aplicable, ya que estas se realizaron sin utilizar el criterio objetivo de tiempo en el servicio. Además, alegaron que el Departamento no ublicó de forma adecuada el plan de cesantías ni lo puso a disposición de los empleados ni lo mencionó en las cartas de cesantías. Por otro lado, plantearon que: (1) no se les brindó la oportunidad de examinar el orden de prelación para cotejar si la antigüedad y clasificación de sus respectivos puestos eran correctas, (2) no fueron orientados adecuadamente sobre los derechos y beneficios marginales, (3) el Departamento no refirió a otras agencias las listas de los empleados afectados por la cesantía, (4) no existió Plan de Cesantías ni Registro de Antigüedad y Prelación, y (5) hubo selectividad en las reubicaciones realizadas al Departamento.
Al amparo de tales alegaciones, los recurridos solicitaron la reinstalación en sus puestos o la reubicación a un puesto de igual jerarquía en el Departamento, el pago de salarios y haberes dejados de percibir, la declaración de nulidad del plan de cesantías usado por el Departamento y la nulidad de sus cesantías. Como parte del proceso ante JASAP, los recurridos le solicitaron en repetidas ocasiones al Departamento que produjera copia de varios documentos.(4) Sin embargo y a pesar de órdenes de JASAP, el Departamento nunca los proveyó.
*31 Luego de varios trámites procesales, JASAP emitió una resolución en la cual declaró “no ha lugar” la apelación de los recurridos. Concluyó que las cesantías se hicieron conforme a derecho, ya que el Departamento cumplió a cabalidad con el Plan de Cesantías.
Inconformes con esa determinación, los recurridos acudieron ante el foro apelativo mediante un recurso de revisión judicial. El 30 de junio de 2005, el Tribunal de Apelaciones emitió una sentencia en la cual revocó la resolución de JASAP. Fundamentó su decisión en que a los recurridos se les violó su derecho a ser oído y a confrontar la prueba en su contra, según lo dispone el debido proceso de ley. Así, ordenó a JASAP a celebrar una vista evidenciaría adversativa.
De acuerdo con lo resuelto por el foro apelativo intermedio y luego de varios incidentes procesales, el 7 de julio de 2011 CASP celebró una vista pública. Por parte del Departamento testificó la Sra. Luz Vázquez Correa, quien trabajó como Coordinadora del Programa Apoyo Organizacional del Departamento.(5) La señora Vázquez Correa explicó que el Departamento realizó varias conferencias en todas las instalaciones que fueron privatizadas para orientar a los empleados sobre la venta de ese centro, y sobre los derechos y beneficios a que tenían derecho. Añadió que la Oficina de Recursos Humanos de cada región estaba encargada de notificar a los empleados sobre las orientaciones. No obstante, el Departamento no presentó evidencia sobre *32 las notificaciones que la Oficina de Recursos Humanos le cursó a los empleados ni las listas de asistencia que se tomaron en las orientaciones.
Por otro lado, la señora Vázquez Correa testificó que no se utilizó el plan de cesantías que existía en el Departamento, sino que el proceso de cesantías se hizo en dos etapas. Según su testimonio, la primera etapa consistió en las orientaciones que se llevaron a cabo en cada instalación y la segunda etapa fue la entrega de las cartas de cesantías a los empleados treinta días antes que la adquiriente tomara posesión de ese centro. Así, las cesantías se hicieron según la venta de las instalaciones y no por la antigüedad de los empleados. Indicó que se realizó de esa manera porque como los hospitales se iban a vender no había que tener en cuenta los años de servicio de los empleados y, por lo tanto, la reubicación por antigüedad era inadecuada.
Por último, la señora Vázquez Correa declaró que AFASS preparó un listado con el nombre y los datos de los empleados. Alegó que el listado se entregó en la Oficina de Recursos Humanos de cada región para que fueran ellos quienes verificaran la información con sus empleados. Luego, se envió a otras agencias gubernamentales por si necesitaban empleados de esas clasificaciones. Ahora bien, aclaró que no le consta si efectivamente los empleados de cada región tuvieron acceso a ese listado y tampoco se presentó evidencia de que el listado se envió a otras agencias.
Por su parte, la evidencia de los recurridos se fundamentó en prueba de refutación. Presentaron como testigos al Sr. Julio Figueroa Ramírez, al Sr. Basilio A. Padilla Rivera, a la Sra. Luz E. Guzmán Cortés y a la Sra. Zenaida Rodríguez Cardona. En esencia, todos testificaron que nunca fueron citados para las orientaciones, tampoco fueron orientados sobre el proceso de cesantía ni de sus derechos ni beneficios, no fueron reubicados ni vieron el listado de prelación. Ahora bien, a diferencia de los otros testigos, la señora Rodríguez Cardona testificó que fue entrevistada *33 por el privatizador y este le ofreció un turno rotativo como enfermera, sin embargo, lo rechazó por no ser un turno fijo.
Luego de los testimonios mencionados, a petición de los recurridos y sin la objeción del Departamento, el caso quedó sometido por el expediente. El 14 de diciembre de 2011 CASP emitió una resolución en la que declaró “ha lugar” la apelación de los recurridos, excepto la de la señora Rodríguez Cardona, ya que de su testimonio surgió que ella rechazó el trabajo ofrecido por el privatizador. CASP concluyó que las cesantías no se llevaron a cabo según el plan de cesantías establecido por ley y que el listado de prelación no se puso en vigor. Así las cosas, ordenó la reinstalación de los empleados cesanteados con el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de la cesantía ilegal. No obstante, determinó que a la paga dejada de percibir se le tenía que restar los haberes percibidos en otros trabajos durante ese periodo, a la luz de la norma establecida en Hernández v. Mun. de Aguadilla, supra.
Inconformes, tanto la señora Rodríguez Cardona como el Departamento presentaron por separado una reconsideración ante CASP. Luego de evaluar las solicitudes, CASP modificó su resolución a los únicos efectos de que los recurridos no fueran reinstalados. Así modificada, CASP dispuso como único remedio que el Departamento pague a los recurridos los ingresos dejados de percibir con la reducción de los haberes percibidos en otros trabajos y los beneficios marginales a los que hubiesen tenido derecho. Por otro lado, denegó la solicitud de reconsideración de la señora Rodríguez Cardona.
Estando todas las partes inconformes con el dictamen de CASP, el 8 de marzo de 2012 presentaron por separado una revisión administrativa ante el Tribunal de Apelaciones. Ante esta situación y a petición del Departamento, el foro intermedio consolidó ambos recursos. Luego *34 de evaluar el expediente y con el beneficio de la transcripción de la vista, el tribunal apelativo emitió una sentencia en la cual modificó la resolución de CASP y ordenó, además, la reinstalación de los empleados cesanteados ilegalmente.
Oportunamente, el 29 de noviembre de 2012, el Departamento acudió ante esta Curia mediante el recurso de certiorari que nos ocupa y planteó los señalamientos de errores siguientes:

Erró el Tribunal de Apelaciones al determinar que la conclusión de la CASP de que las cesantías fueron ilegales surgió de la evidencia sustancial que obra en el expediente, analizada a la luz de las disposiciones legales y reglamentarias que no se siguieron por Salud.

Erró el Tribunal de Apelaciones al confirmar el remedio del pago de los haberes dejados de percibir a casi todos los apelantes aunque no existe evidencia en el expediente administrativo respecto a cuáles de ellos fueron reclutados por la privatizadora adquiriente o no aceptaron el trabajo ofrecido por esta. Erró el Tribunal de Apelaciones al modificar la resolución recurrida para añadir la reinstalación a los empleados cesanteados a otras unidades o facilidades de Salud. (Énfasis en el original). Petición de certiorari, pág. 7.
II
Evaluados los planteamientos esbozados por ambas partes, resolvemos que erró el Tribunal de Apelaciones al modificar la sentencia de CASP y ordenar la reinstalación de los empleados. El Departamento de Salud venía obligado a desarrollar un plan de cesantías utilizando el criterio de antigüedad en el servicio como el factor determinante para decretar las cesantías, conforme a la Ley Núm. 5 de 14 de octubre de 1975(6) y al Reglamento Núm. 2186 de 30 de noviembre de 1976 adoptado por la Oficina Central de Administración de Personal (OCAP). No obstante y contrario *35 a lo expuesto, el Departamento no siguió el criterio de antigüedad al realizar las cesantías. Por lo tanto, las cesantías fueron ilegales.
Ahora bien, con la aprobación de la Ley Núm. 190-1996 (24 LPRA see. 3301 et seq.), posteriormente derogada con la aprobación de la Ley Núm. 3-2003 (24 LPRA see. 3326 et seq.), el legislador permitió que el Gobierno abandonara su función de proveedor de servicios para convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud. Quiere decir que el Departamento se quedó con la única función de fiscalizar y regular los servicios de salud. Ante esta situación, los puestos que brindaban prestación directa médico-hospitalaria pasaron a las entidades privadas que adquirieron los centros y el Departamento mantuvo puestos administrativos.
Por lo tanto, a pesar de que las cesantías fueron ilegales no procedía ordenar la reinstalación de los recurridos. Ante la situación de que todos los centros fueron privatizados y el Departamento mantuvo únicamente puestos administrativos para regular los servicios de salud, no existen puestos análogos en el Departamento en los cuales se puedan reinstalar a los empleados cesanteados ilegalmente.
Así las cosas, el único remedio disponible es que el Departamento abone la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante ese periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías.
Por lo tanto, se modifica la sentencia recurrida en cuanto a que no procede la reinstalación y se devuelve el caso a CASP para que calcule la paga dejada de percibir desde que ocurrió la cesantía ilegal de cada empleado hasta la fecha cuando se vendió el último centro u hospital del Departamento.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado Señor *36 Kolthoff Caraballo emitió una opinión de conformidad, a la cual se unió el Juez Asociado Señor Martínez Torres. El Juez Asociado Señor Estrella Martínez emitió una opinión de conformidad en parte y disidente en parte. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente. La Jueza Presidenta Señora Fiol Matta no intervino.
Opinión de conformidad emitida por el
Juez Asociado Señor Kolthoff Caraballo, a la cual se unió el Juez Asociado Señor Martínez Torres.
El presente recurso requiere que determinemos si el Departamento de Salud cumplió con el procedimiento establecido por ley al cesantear a sus empleados.
I
Los hechos del caso de epígrafe están expuestos con claridad en la sentencia del Tribunal, por lo que consideramos innecesario reproducirlos. Así, pasamos a discutir el derecho aplicable a la controversia ante nuestra consideración.
II
A. Reforma del Sistema de Salud de Puerto Rico
El Departamento de Salud es una agencia de Puerto Rico que tiene a su cargo todos los asuntos que se le encomienden por ley relacionados con la salud, sanidad y beneficencia públicas.(1) En 1993, se inició lo que se conoce como la Reforma del Sistema de Salud de Puerto Rico (Re *37 forma) con la aprobación de la Ley Núm. 72-1993.(2) Mediante esta se creó la Administración de Seguros de Salud de Puerto Rico (ASES) para gestionar, negociar y contratar planes de seguros de salud que permitieran obtener para sus asegurados servicios hospitalarios de calidad.(3)
Posteriormente, la Asamblea Legislativa aprobó la Ley Núm. 190-1996(4) para reglamentar el proceso de privatización. Esta ley se estableció para que se pudieran implementar los cambios introducidos por la Ley Núm. 72-1993, supra, a saber, permitirle al Gobierno de Puerto Rico: (1) abandonar su función tradicional de proveedor de servicios, convertirse en agente fiscalizador, evaluador y regulador de los sistemas de salud y asumir el papel de promotor de la salud y de procurador del paciente, y (2) arrendar y transferir a entidades privadas las instalaciones de salud pública para que estas entidades las operen como empresas privadas, sujeto a las leyes del mercado y a la libre competencia.(5) Así, la ley le concedió al Secretario de Salud la discreción necesaria para arrendar, subarrendar, vender, ceder, permutar o transferir permanentemente las instalaciones de salud cuya titularidad pertenecían al Gobierno, agencias o “instrumentalidades”.(6)
Por otro lado, el Art. 19 de la Ley Núm. 190-1996, supra, estableció el procedimiento a seguir con los empleados que no pasaran a trabajar con el privatizador. En lo pertinente, el artículo disponía que:
*38 [e]n cuanto a los empleados regulares del Departamento de Salud que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, se les garantizará sus derechos a tono con lo dispuesto en el inciso (d), Artículo 6 de la Ley Núm. 5 de 6 de abril de 1993, conocida como “Ley de Reorganización Ejecutiva de 1993”.
Ahora bien, con la aprobación de la Ley Núm. 31-1997(7) se enmendó el citado Art. 19 de la Ley Núm. 190-1996. El legislador expresó que los derechos de los empleados que no fueran contratados por el privatizador se garantizarían según la Ley Núm. 5 de 14 de octubre de 1975, mas no con la Ley Núm. 5-1993 como disponía antes. Además, creó un registro interagencial para los empleados que no fueran seleccionados por el privatizador. Así, los empleados que se añadieran al registro serían considerados preferentemente para puestos iguales o similares al que ocupaban que estuvieran vacantes en cualquier agencia o corporación pública.(8) La Sec. 15 de la Ley Núm. 31-1997 estableció:
El arrendamiento, subarrendamiento, venta, cesión, permuta o contratación mediante cualquier otro modelo de contratación que el Secretario, en unión con el Banco, determine conforme a la discreción que le confiere esta Ley, con relación a una o más instalaciones de salud gubernamentales a una entidad o intereses privados no establecerá relación de patrono y empleado entre el contratista y el Banco ni entre el contratista y el Departamento y así se establecerá en el contrato. En cuanto a los empleados regulares del Departamento que laboren en la instalación o instalaciones al momento de tal privatización, y que no pasen a ser empleados de la entidad contratante, el Departamento velará por el cumplimiento de las disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, y las otras leyes y reglamentos aplicables. La entidad contratante no incurrirá en responsabilidad alguna con *39 aquellos empleados del Departamento que no emplee.
La Oficina de Gerencia y Presupuesto y la Oficina Central de de Asesoramiento Laboral y de Administración de Recursos Humanos y el Departamento del Trabajo y Recursos Humanos serán partícipes, junto al Secretario, de la coordinación necesaria los efectos del proceso de reubicación y cesantías. Se creará un registro especial en dichas agencias para conceder preferencia a los empleados que no sean transferidos a las empresas adquirientes para su reubicación a través de los diferentes organismos gubernamentales y en la empresa privada. [...]
Para lograr este propósito el Secretario, en unión con la Oficina de Gerencia y Presupuesto, nombrarán un Coordinador de Reubicación. Este funcionario establecerá las normas para el referimiento y selección de los candidatos a los diferentes organismos gubernamentales. También coordinará con la Administración de Fomento Comercial la extensión de los beneficios del Programa Vale Empleo y Vale Empleo Plus de forma preferential a todos los empleados que no sean transferidos a las empresas adquirientes. El Departamento del Trabajo dará prioridad a los empleados cuyos nombres aparecen en dicho registro, en sus programas de empleo, reempleo y adiestramiento, tales como los adiestramientos profesionales por la Administración del Derecho al Trabajo y los del Negociado de Fomento al Trabajo. (Énfasis nuestro).
Por otra parte, la See. 26 de la Ley Núm. 31-1997 dispuso que esos empleados que no pasaran a trabajar con el privatizador también serían incluidos en cualquier plan de reubicación que cree la Oficina de Gerencia y Presupuesto (OGP) o cualquier otra agencia gubernamental en coordinación con el Secretario del Departamento de Salud (Secretario).(9)
Finalmente, en 1998 la Asamblea Legislativa disolvió la AFASS como entidad jurídica mediante la aprobación de la Ley Núm. 187-1998. Esta ley facultó al Secretario a que conjuntamente con la OGP y con la aprobación del Gobernador de Puerto Rico llevara a cabo cambios organizadonales, incluyendo: consolidar, modificar, abolir, suprimir o crear cualquier programa, plan o proyecto para lograr la *40 consolidación de AFASS con el Departamento.(10) Ahora bien, la ley específicamente expresó que no podía afectar o eliminar ningún programa establecido por ley sin el consentimiento de la Asamblea Legislativa.(11) Por otro lado, la ley facultó también al Secretario a “recibir y AFASS a transferir personal, récords, documentos, archivos, equipo, materiales, fondos disponibles y el uso de las facilidades de salud”.(12)
B. Ley de Personal del Servicio Público y la reglamentación aplicable
La ley que regía el sistema de personal del servicio público al momento de las cesantías en el Departamento era la Ley Núm. 5 de 14 de octubre de 1975, mejor conocida como Ley de Personal del Servicio Público de Puerto Rico (Ley Núm. 5).(13) La política pública de esta ley fue extender el principio de mérito a todo el servicio público, incluso a las agencias e “instrumentalidades” excluidas por esta ley.(14) Este principio conlleva a que los más aptos, de acuerdo con sus méritos y capacidades, sean los que sirvan al Gobierno. Así, el Estado obtendría los más altos niveles de excelencia, eficiencia y productividad en los servicios que brinda.(15) Además, este principio vela por que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo con exclusiva atención a sus méritos, para así evitar el discrimen.(16)
*41 Por otro lado, en el principio de mérito el derecho a la retención del empleo es fundamental. Así, los empleados públicos de carrera tienen una expectativa de continuidad en el empleo.(17) Ahora bien, el derecho a la retención del empleo tiene sus limitaciones. Por lo tanto, no existe un derecho adquirido a la retención o a no ser cesanteado de un empleo en el servicio público.(18) No obstante, los empleados públicos de carrera no pueden ser privados de sus empleos sin que se cumplan con los procedimientos establecidos por ley, ya que estos forman parte del debido proceso de ley.(19) A su vez, las agencias administrativas están obligadas a seguir estrictamente los reglamentos que ellas mismas promulgaron y no queda a su discreción reconocer o no los derechos que le extendieron a sus empleados.(20) Quiere decir que “una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida”.(21)
Antes de analizar la Ley Núm. 5, entiendo que es importante aclarar la diferencia entre “cesantía” y “destitución” para determinar qué secciones de esa ley aplican al caso de referencia. Veamos.
A través de los años, este Tribunal ha analizado y resuelto casos similares al de autos relacionados con cesantías y destituciones.(22) Ahora bien, aunque nunca hemos *42 definido estos dos términos, sí los hemos distinguido. Por ejemplo, a pesar de que en Depto. Recs. Naturales v. Correa, 118 DPR 689 (1987), la controversia era si un empleado público, con nombramiento transitorio, tenía un interés legítimo de retención en el empleo una vez expirado el término de su designación, expresamos que “no estamos ante una suspensión o destitución sino ante una cesantía en el cargo”. Como se puede observar, con esa expresión quisimos aclarar que “destitución” no es lo mismo que “cesantía” y señalamos que en ese caso en particular nos encontrábamos ante una cesantía.
Nótese que, a pesar de que en las leyes de personal del servicio público el legislador tampoco ha definido estos términos, sí ha expresado claramente que son diferentes: cesantías no se entenderán como destituciones.(23) Así, en la ley vigente sobre el personal del servicio público, Ley Núm. 184-2004, mejor conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, el legislador creó una sección sobre las destituciones y otra distinta sobre las cesantías. En cuanto a las destituciones el Art. 6, Sec. 6.6(3) establece que:
Cuando la conducta de un empleado no se ajuste a las nor-mas y requerimientos establecidos, cada agencia deberá tomar las medidas correctivas o acciones disciplinarias necesarias y adecuadas. Entre otros, se podrá considerar la amonestación verbal, reprimenda escrita, la suspensión de empleo y sueldo y la destitución. (Énfasis nuestro). 3 LPRA sec. 1462e(3).
Por otro lado, el Art. 6, Sec. 6.6(9) dispone, en lo pertinente, sobre las cesantías y expresa:

Se podrán decretar cesantías en el servicio, sin que constituya acción disciplinaria o destitución, en las siguientes circunstancias:

*43 (a) Debido a la eliminación de puestos por falta de trabajo o de fondos. En estos casos, las cesantías se decretarán dentro de los grupos de empleados cuyos puestos tengan el mismo título de clasificación y considerando dentro de cada grupo el status de los empleados, su productividad, hábitos y actitudes reflejadas en sus evaluaciones y su antigüedad en el servicio. A los fines de determinar antigüedad, se considerará todo servicio prestado en puestos de las agencias comprendidas en el Sistema. (Énfasis nuestro). 3 LPRA sec. 1462e(9).
Precisado lo anterior, las cesantías son una medida que otorga la ley, lo cual no se estima como una acción disciplinaria. Estas pueden ocurrir por la eliminación de puestos por falta de trabajo, presupuesto o la determinación de que el empleado está física o mentalmente incapacitado para desempeñar los deberes de ese puesto. Por lo tanto, las cesantías no son prerrogativas del patrono.(24)
Por otro lado, la destitución es una sanción como acción disciplinaria que tiene el resultado de desvincular al empleado totalmente del servicio público. Quiere decir, que es prerrogativa del patrono destituir a un empleado como medida disciplinaria. Una cesantía, contrario a una destitución, no constituye un factor negativo, contra el empleado, para este volver a solicitar empleo en la misma agencia o en otra agencia gubernamental.
Conforme a lo anterior, manera de analogía, existen varios reglamentos en distintas agencias en los cuales han definido y diferenciado lo que es una cesantía y una destitución.(25) Todos estos reglamentos han expresado que cesantía es “la separación del servicio impuesta a un empleado debido a la eliminación de su puesto por falta de *44 trabajo o de fondos, o por estar física y/o mentalmente incapacitado para desempeñar los deberes del puesto que ocupa”.(26) Mientras que destitución lo han definido como “la separación total y absoluta del servicio impuesta a un empleado como medida disciplinaria por justa causa”.(27)
Así, pues, conociendo la diferencia de ambos términos, el legislador claramente expresó en la Ley Núm. 5 que las cesantías no se entenderán como destitución. En lo pertinente, dispuso en la See. 4.6(6) que “se podrán decretar cesantías en el servicio sin que esto se entienda como destitución.” (Énfasis nuestro). Asimismo, en el Reglamento Núm. 2186 se estableció la See. 9.2 sobre acciones disciplinarias, en la cual se dispuso sobre las destituciones y, por otro lado, se creó la See. 9.3 en la cual se establecieron las normas sobre las cesantías. En esta última sección se ex-presó que la cesantía no se entendería como una destitución. Por lo tanto, el propio ordenamiento jurídico provee para que “[se pueda] decretar cesantías en el servicio, sin que constituya acción disciplinaria [o] destitución [en caso de] la eliminación de puestos por falta de trabajo o de fondos”.(28) Así las cosas, cuando la letra de la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada con el pretexto de cumplir con su espíritu.(29) Por lo tanto, aplican aquí las Sees. 4.6 y 5.18 de la Ley Núm. 5, las cuales expresan los procedimientos que se han de seguir en casos de cesantías.
Aclarado lo anterior, pasemos a analizar las secciones de la Ley Núm. 5 aplicables a este caso. La See. 4.6 de la Ley Núm. 5,(30) estableció las causas para decretar las cesantías de los empleados. En lo pertinente, dispuso:
(6) Se podrán decretar cesantías en el servicio sin que esto *45 se entienda como destitución, en los siguientes casos:
(a) Debido a la eliminación de puestos por falta de trabajo o de fondos, o
(b) [...]
En la situación descrita en la cláusula (a) de este inciso la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se tome en consideración entre otros factores el status de los empleados y su antigüedad y el tiempo en servicio. (Énfasis nuestro).
La Ley Núm. 5 también estableció el derecho de los empleados cesanteados por eliminación de puestos a que sus nombres fuesen incluidos en un “registro de elegibles correspondientes a las clases de puestos que ocupaban con carácter regular u otras similares”(31) Además, el inciso (5) de la Sec. 5.18 de la Ley Núm. 5, expresó:
Las condiciones, el orden y la forma en que los nombres han de colocarse en el registro será establecida por las normas que se promulguen al efecto. 3 LPBA see. 1358(5) (ed. 2000).
La Oficina Central de Administración de Personal (OCAP) adoptó el Reglamento Núm. 2186 de 30 de noviembre de 1976, mejor conocido como el Reglamento de Personal: Areas Esenciales al Principio de Mérito (Reglamento Núm. 2186). Este reglamento decretó las normas generales que regirían a través de todo el sistema de personal del servicio público para cumplir con el principio de mérito(32) y estableció el principio de mérito en las áreas indispensables, como lo son: clasificación de puestos, reclutamiento, selección de servidores públicos, ascensos, traslados, descensos, adiestramientos y la retención de empleados en el servicio.(33)
En lo pertinente al caso de autos, el Art. 9, Sec. 9.3(1) del mencionado reglamento estableció todo lo relacionado a la cesantía de empleados públicos debido a la eliminación *46 de puestos por falta de trabajo o fondos. En primer lugar, este artículo dispuso que la autoridad nominadora tenía que adoptar un método o plan para decretar las cesantías.(34) Añadió que “[c]omo parte de dicho método se podrá subdividir la agencia por programas, unidades, oficinas regionales u oficinas locales a los fines de identificar las jurisdicciones en las cuales habrán de decretarse las cesantías”.(35) El Art. 9, Sec. 9.3(l)(a), supra, estableció que una vez se adoptara ese método se tenía que poner en conocimiento de todos los empleados.(36)
Por otro lado, el Art. 9, Sec. 9.3(l)(b) del Reglamento Núm. 2186, fijó el orden de prelación en que las cesantías debían decretarse. Dispuso que en primer término se tenían que cesantear los empleados transitorios, en segundo lugar los empleados probatorios y en última instancia los empleados regulares.(37) Ahora bien, la Sec. 9.3(l)(c) de ese mismo artículo, págs. 76-77, especificó cómo se iba a determinar el orden de prelación. Esta sección estableció lo siguiente:
(c) Para determinar el orden de prelación en que se decretarán las cesantías dentro de cada uno de los grupos de empleados enumerados en el inciso (b) que precede, la autoridad nominadora se ajustará a las siguientes normas:
(1) se tomará en consideración el desempeño de las funciones, de manera que queden cesantes, en primer término los empleados menos eficientes. En casos de igualdad de eficiencia, se tomará en consideración el tiempo en el servicio de manera que queden cesantes los empleados con menos tiempo en el servicio.
(2) a falta de información válida para determinar el desempeño en las funciones, el factor determinante será el tiempo en el servicio, de manera que la persona de más reciente nombramiento en el servicio será la primera en cesar. (Enfasis nuestro).
*47 III
En este caso, el Departamento arguye que las cesantías fueron legales, ya que cumplió con todas las disposiciones establecidas por ley. No le asiste la razón.
En primer lugar, el Departamento no presentó evidencia fehaciente de que haya establecido e implantado un plan de cesantías con todo lo que ello puede suponer e implicar. Como bien concluyó CASP y el Tribunal de Apelaciones, aunque en el expediente se incluyó un documento de varias páginas, firmado por la entonces secretaria del Departamento, la doctora Feliciano de Melecio, no puede colegirse con precisión que se trate, efectivamente, del plan de cesantías al que el Departamento hace alusión en su escrito. Tampoco surge evidencia de que el alegado plan fue comunicado a los recurridos, como lo exigen las disposiciones legales y reglamentarias que hemos analizado. Por el contrario, del testimonio de la única testigo que presentó el Departamento, la señora Vázquez Correa, surge con claridad que aquella no pudo constatar que, en efecto, el alegado plan de cesantías fue comunicado a los recurridos. Tampoco pudo demostrar que los recurridos fueron orientados con respecto al procedimiento de cesantías o hubiesen tenido acceso al listado de prelación que alegadamente preparó la agencia preparó.
No obstante, si tomáramos como cierto que el Departamento preparó un plan de cesantías conforme lo requiere la ley, un examen objetivo de las circunstancias que rodearon las cesantías de los recurridos nos lleva inevitablemente a concluir que la agencia no lo implemento. Veamos.
Como mencionamos, la Ley Núm. 31-1997 estableció que el Departamento tenía que velar el cumplimiento de las disposiciones de la Ley Núm. 5, supra, en cuanto a los empleados regulares del Departamento que fueran cesanteados. Así, la See. 4.6 de la Ley Núm. 5, supra, disponía que se podían decretar las cesantías por la elimina *48 ción de puestos, siempre que tal eliminación se hiciera según lo establecido por reglamento, pero tomando en consideración el estatus de los empleados, su antigüedad y el tiempo en el servicio; entre otros factores. Ante este pronunciamiento, el Departamento alegó que esos factores no eran los únicos que se tenían que tomar en consideración y, por lo tanto, el listado era numerus apertus. Al analizar la ley podemos concluir que el Departamento tiene razón en que esa sección permite que se consideren varios factores para decretar las cesantías, no obstante, los factores expresamente mencionados —el estatus de los empleados, su antigüedad y el tiempo en el servicio— no podían obviarse y tenían que tomarse en consideración. Por esa razón, OCAP al adoptar el Reglamento Núm. 2186 especificó el orden de prelación y cómo se iba a determinar ese orden tomando en consideración los méritos, la antigüedad y el tiempo en el servicio de los empleados.
Por otro lado, el Art. 9, Sec. 9.3(l)(a) del Reglamento Núm. 2186, supra, expresó que las agencias podían subdividirse por programas u oficinas regionales a los fines de identificar las jurisdicciones en las cuales habrían de decretarse las cesantías. Ahora bien, esto no significa que una agencia podía escoger realizar las cesantías por oficina regional o por la antigüedad de los empleados. Esta sección se tiene que analizar en conjunto con el resto del reglamento y las leyes aplicables. De esta forma, al analizar las leyes aplicables a las cesantías del Departamento y las otras secciones del Reglamento Núm. 2186, podemos observar que para decretar las cesantías se tenían que tomar en consideración la antigüedad y el tiempo de servicio de los empleados. Por lo tanto, a pesar de que las cesantías se podían llevar a cabo por centro, en cada centro se tenían que realizar según la antigüedad de los empleados.
Así la cosas, la señora Vázquez Correa admitió que no se llevó a cabo el plan de cesantías y tampoco se tomó en consideración los años de servicios de los empleados, ya *49 que las cesantías se hicieron por centro y no por la antigüedad de los empleados. Explicó que las cesantías se realizaron en dos etapas para que no se vieran afectados los servicios de salud. Además, argüyó que como eventualmente todos los hospitales iban a ser vendidos, era inadecuado realizar las cesantías por antigüedad y reubicar a los empleados en otros centros.
Esta Curia ha expresado que aunque las agencias pueden cesantear a sus empleados, están obligadas a seguir los procedimientos y las normas establecidas en las leyes y los reglamentos aplicables.(38) Además, las agencias tienen que seguir estrictamente los reglamentos que promulgaron, por lo tanto, no tienen discreción para decidir qué parte de los reglamentos llevar a cabo. Así las cosas, aunque la Ley Núm. 187-1998 facultó al Departamento a establecer cam-bios organizacionales, como: modificar, abolir o suprimir un plan, expresó que no podía afectar o eliminar ningún programa establecido por ley sin el consentimiento de la Asamblea Legislativa. Quiere decir que las disposiciones establecidas en la Ley Núm. 5 y en el Reglamento Núm. 2186 eran de cumplimiento mandatorio al implantar el plan de cesantías y la agencia estaba obligada a examinar y cumplir con lo allí establecido. Por lo tanto, el Departamento estaba obligado a desarrollar un plan de cesantías utilizando el criterio de antigüedad en el servicio como el factor determinante para decretar las cesantías. Además, según la Ley Núm. 31-1997, el Departamento estaba obligado a crear un registro especial con la información de los empleados que no fueron transferidos al privatizador para que fueran reubicados en el gobierno. No obstante y contrario a lo expuesto, el Departamento no siguió el criterio de antigüedad al realizar las cesantías y no presentó evidencia de que hubiese creado el registro especial.
Es importante aclarar que cuando la Asamblea Legisla *50 tiva aprobó la Ley Núm. 31-1997, para enmendar la Ley Núm. 190-1996, ya el proceso de privatización de las instalaciones médico-hospitalarias del Estado había comenzado. Así, el legislador quiso enmendar el Art. 19 de la Ley Núm. 190-1996 (1996 (Parte 1) Leyes de Puerto Rico 1078, 1086) para especificar que los derechos de los empleados cesanteados se garantizarían, según lo dispuesto en la Ley Núm. 5, conociendo que esta ley establecía que, al decretar las cesantías, se tenía que considerar la antigüedad de los empleados. Si el legislador entendía que era inadecuado utilizar el criterio de la antigüedad de los empleados así lo hubiese expresado. Sin embargo, no lo hizo. Así las cosas, no cabe duda que el Departamento incumplió con las disposiciones legales al llevar a cabo las cesantías, por lo tanto, las cesantías fueron ilegales.
Por otro lado, el Departamento alegó que el foro apelativo erró al conceder la paga atrasada que los empleados cesanteados dejaron de percibir y la concesión de todos los beneficios marginales porque no surge del expediente cuáles de los empleados fueron reclutados por el privatizador o no aceptaron las ofertas de estos. No obstante, el Departamento presentó este argumento por primera vez ante el Tribunal de Apelaciones. Durante el proceso ante CASP, el Departamento tuvo a su disposición el mecanismo de descubrimiento de prueba en el cual pudo solicitar evidencia al respecto, mas no lo hizo. Incluso, cuando los recurridos solicitaron que el caso se sometiera por el expediente el Departamento se allanó y estuvo de acuerdo con esa solicitud. Tenemos que recordar que las partes no pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante los foros apelativos.(39) De ordinario un tribunal apelativo no entrará a evaluar argumentos que pu *51 dieron haber sido sometidos ante los foros inferiores por una parte apelante, pero no fueron presentados.(40)
De acuerdo con lo anterior, tanto CASP como el foro apelativo resolvieron correctamente al ordenar que el Departamento abonara la paga atrasada que los empleados cesanteados dejaron de percibir y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías. Asimismo, no erraron al restar los haberes percibidos en otros trabajos durante ese periodo, según resolvimos en Hernández Badillo v. Municipio de Aguadilla, supra. En el caso mencionado, concluimos que “en aquellos casos en que un empleado público despedido ilegalmente haya recibido ingresos, por trabajos obtenidos y realizados durante el periodo que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir, independientemente de cuál es la fuente de donde provienen los mismos”.(41)
Ahora bien y como mencionamos, el Tribunal de Apelaciones modificó la resolución de CASP y ordenó, además, la reinstalación de los empleados cesanteados a puestos análogos. No obstante, el foro intermedio erró en esa determinación.
Aunque bien es cierto que la Ley Núm. 187-1998 facultó al Departamento a llevar a cabo cambios organizacionales internos, como transferir personal de AFASS al Departamento, se refería a los puestos compatibles que permanecerían en el Departamento. Como vimos, la Reforma se llevó a cabo con el propósito de mejorar los servicios de salud y brindarle a los ciudadanos acceso a cuidados médico-hospitalarios de calidad.(42) Así las cosas, el Gobierno se fue desvinculando de su rol tradicional de interventor en la *52 prestación directa de servicios de salud.(43) Con la aprobación de la Ley Núm. 190-1996, el legislador permitió que el Gobierno abandonara su función de proveedor de servicios para convertirse en agente fiscalizado^ evaluador y regulador de los sistemas de salud.(44) Por lo tanto, los puestos que brindaban prestación directa médico-hospitalaria pasaron a las entidades privadas que adquirieron los centros y el Departamento mantuvo puestos administrativos. Es por esta razón que al aprobarse la Ley Núm. 31-1997 el legislador creó un registro interagencial para que los empleados cesanteados que no pasaran a trabajar con el privatizador fueran considerados en puestos similares en otras agencias o corporaciones públicas.
Por lo tanto, a pesar de que las cesantías fueron ilegales no procedía ordenar la reinstalación de los recurridos. Los recurridos solo tenían derecho a ser incluidos en el Plan de Reubicación para ser considerados en puestos similares en otras agencias o corporaciones públicas.
IV
Según los fundamentos expuestos, entiendo que no cabe duda de que en el caso de autos el Departamento podía cesantear a los recurridos, en virtud de la legislación promulgada para implantar la Reforma. Esta permitía la venta de las facilidades de salud y, como consecuencia, la cesantía de los empleados. Ahora bien, el Departamento tenía que dar estricto cumplimiento al procedimiento establecido por ley y reglamento, en protección del debido proceso de ley, incluyendo añadir a los recurridos en el Plan de Reubicación que se crearía para reubicar a los empleados cesanteados, que no fuesen reclutados por el privatizador, en otras áreas en el gobierno. Por lo tanto, procede como *53 único remedio que el Departamento abone la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante dicho periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías.
V
En armonía con lo señalado, estoy conforme con la determinación de este Tribunal de modificar la sentencia del Tribunal de Apelaciones y ordenar al Departamento de Salud a abonar la paga atrasada que los empleados cesanteados dejaron de percibir, restando los haberes percibidos en otros trabajos durante ese periodo, y la concesión de todos los beneficios marginales a los que hubiesen tenido derecho durante el periodo de cesantías.

 Ley Núm. 72-1993 (24 LPRA sec. 7001 et seq.).

 En virtud de la Ley Núm. 184-2004, mejor conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRAsec. 1461 et seq., se eliminó la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) y se creó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). No obstante, mediante el Plan de Reorganización Núm. 2-2010, se fusionó CASARH y la Comisión de Relaciones del Trabajo del Servicio Público, creándose la Comisión Apelativa del Servicio Público (CASP).

 El 19 de septiembre de 2002 los casos fueron, consolidados con el nombre de Maggie Acevedo Sepúlveda y otros.

 Los documentos requeridos fueron: (1) lista de puestos vacantes a la fecha de la implantación del plan de cesantías; (2) nombramientos efectuados luego de la implantación del plan de cesantías y seis meses antes; (3) copia del Registro de Reingreso; (4) documentos que evidencien el procedimiento utilizado para aplicar el plan de cesantías; (5) copia de la notificación entregada a los empleados en la cual se informan los años de servicios; (6) copia de los puestos y clases que se eliminaron con el plan de cesantías; (7) evidencia de que se le apercibió a los empleados de su derecho a presentar documentos sobre sus años de servicios; (8) documentos que evidencien que se le informó a los empleados que se pretendía implantar un plan de cesantías y las razones para ello; (9) evidencia de que los recurridos recibieron copia *31 del plan de cesantías; (10) copia del listado de prelación; (11) copia de las cartas enviadas a otros municipios o agencias para que tomaran en consideración a los empleados que serían cesanteados para una oportunidad de empleo; (12) copia del registro de puestos del HospitalSubregional de Fajardo; (13) copia de la lista final de puestos y empleados reubicados y cesanteados durante el plan de cesantías; (14) evidencia de las gestiones realizadas para evitar el plan de cesantías, y (15) copia del Presupuesto del Departamento y de la AFASS.

 El Departamento de Salud creó este grupo interdisciplinario compuesto por: sicólogos del Departamento, personal técnico de Recursos Humanos, representantes de la Administración de Sistemas de Retiro y representantes de la Asociación de Empleados del ELA y del Departamento del Trabajo, para brindar orientación a los empleados que iban a ser cesanteados con motivo de la venta de los CDT y hospitales.

 3 LPRA sec. 1301 et seq. Esta ley quedó derogada con la aprobación de la Ley Núm. 184-2004, supra.

 Véase la Ley Núm. 81 de 14 de marzo de 1912, según enmendada, 3 LPRA secs. 171-190.

 Ley Núm. 72-1993, mejor conocida como la Ley de la Administración de Seguros de Salud de Puerto Rico (ASES), 24 LPRA see. 7001 et seq.

 Exposición de Motivos de la Ley Núm. 72-1993 (1993 (Parte 1) Leyes de Puerto Rico 327).

 Ley Núm. 190-1996, mejor conocida como la Ley para Reglamentar el Proceso de Privatización de las Instalaciones de Salud Gubernamentales, 24 LPRA ant. see. 3301 et seq.

 Exposición de Motivos de la Ley Núm. 190-1996 (1996 (Parte 1) Leyes de Puerto Rico 1078).

 24 LPRA ant. sec. 3303.

 Ley Núm. 31-1997 (24 LPRA ant. see. 3301 et seq.), mejor conocida como la Ley para Reglamentar el Proceso de Privatización de las Instituciones de Salud Gubernamentales. Esta ley enmendó varios artículos de la Ley Núm. 190-1996, supra.

 Sec. 15 de la Ley Núm. 31-1997 (24 LPRA sec. 3318 (ed. 2002)).

 Sec. 26 de la Ley Núm. 31-1997 (24 LPRA ant. sec. 3325).

 Art. 2 de la Ley Núm. 187-1998 (24 LPRA see. 337 n.).

 íd.

 Art. 3 de la Ley Núm. 187-1998 (24 LPRA see. 337 n.).

 3 LPRA ant. see. 1301 et seq. Esta ley quedó derogada con la aprobación de la Ley Núm. 184-2004, mejor conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA see. 1461 et seq.

 Art. 2, Sec. 2.1(1) de la Ley Núm. 5 de 14 de octubre de 1975 (3 LPRA ant. sec. 1311(1)). Véase Rodríguez v. Bco. Gub. de Fom. P.R., 151 DPR 383 (2000).

 Art. 2, Sec. 2.1(1) de la Ley Núm. 5, supra. Véase Torres Solano v. P.R.T.C., 127 DPR 499, 514 (1990).

 Art. 2, Sec. 2.1(1) de la Ley Núm. 5, supra. Véanse, además: Martínez v. Ofic. del Gobernador, 152 DPR 586, 596 (2000); Rodríguez v. Bco. Gub. de Fom. P.R., 151 *41 DPR 383, 410 (2000); Olivieri Morales v. Pierluisi, 113 DPR 790, 797-798 (1983).

 Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 69 (2010); Vázquez Cintrón v. Banco Desarrollo, 171 DPR 1, 21 (2007); García v. Mun. de Arroyo, 140 DPR 750, 754 (1996).

 Domínguez Castro et al. v. E.L.A. I, supra.

 3 LPRA sec. 1336. Véanse, además: Domínguez Castro et al. v. E.L.A. I, supra; Camacho Torres v. AAFET, 168 DPR 66, 81 (2006); U. Ind. Emp. A.E.P. v. A.E.P., 146 DPR 611, 618 (1998); Depto. Recs. Naturales v. Correa, 118 DPR 689, 694 (1987).

 T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 81 (1999); García Cabán v. U.P.R., 120 DPR 167, 175 (1987).

 T-JAC, Inc. v. Caguas Centrum Limited, supra.

 Domínguez Castro v. E.L.A. I, supra, págs. 435 y 437; Rodríguez v. Bco. Gub. de Fom. P.R., supra, pág. 413; Carrón Lamoutte v. Compañía de Turismo, 130 DPR 70, 95 (1992); Depto. Recs. Naturales v. Correa, supra, pág. 697; Calzada Quiñones v. D.A.C.O., 114 DPR 757, 760 (1983); Delbrey v. Municipio de Carolina, 111 DPR 492, 494 (1981).

 Art. 6, Sec. 6.6(9) de la Ley Núm. 184-2004 (3 LPRA sec. 1462e); Art. 4, Sec. 4.6(6) de la derogada Ley Núm. 5.

 N.L.B.R. v. Advertisers Mfg. Co., 823 F.2d 1086 (7mo Cir. 1987).

 Algunos de estos reglamentos son: Arts. 5(E) y 5(K) del Reglamento Núm. 6222, mejor conocido como Reglamento de Recursos Humanos de la Compañía de Turismo, 25 de octubre de 2000; Arts. 7(10) y 7(17) del Reglamento Núm. 8117, mejor conocido como Reglamento de Personal de la Autoridad de Tierras de Puerto Rico y sus Subsidiarias, 12 de diciembre de 2011; Art. 105.4 del Reglamento Núm. 4453, mejor conocido como el Reglamento de Personal de la Autoridad de los Puertos de Puerto Rico, 19 de septiembre de 1990; Arts. 4(10) y 4(17) del Reglamento Núm. 4177 de 13 de marzo de 1990, mejor conocido como el Reglamento de Personal de Servicio de Carrera del Departamento de Justicia.

 íd.

 íd.

 Domínguez Castro v. E.L.A. I, supra, pág. 437.

 Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14.

 3 LPRA sec. 1336 (ed. 2000).

 See. 5.18(1) de la Ley Núm. 5 (3 LPRA see. 1358(1) (ed. 2000)).

 Véase Introducción del Reglamento Núm. 2186.

 íd.

 Art. 9, Sec. 9.3(l)(a) del Reglamento Núm. 2186, págs. 75-76.

 íd.

 íd.

 Art. 9, Sec. 9.3(l)(b) del Reglamento Núm. 2186, pág. 77.

 Delgado v. D.S.C.A., 114 DPR 177, 181 (1983), citando a Delbrey v. Municipio de Carolina, 111 DPR 492, 496 (1981).

 Const. Jose Carro v. Mun. Dorado, 186 DPR 113, 129 (2012), citando a J. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, 2011, T. III, pág. 1042; Vera v. Dr. Bravo, 161 DPR 308, 334 (2004).

 Ortiz Torres v. K & A Developers, Inc., 136 DPR 192, 202 (1994).

 Hernández Badillo v. Municipio de Aguadilla, 154 DPR 199, 209 (2001).

 Véase Art. II de la Ley Núm. 72-1993.

 Véase Exposición de Motivos de la Ley Núm. 31-1997 (1997 (Parte 1) Leyes de Puerto Rico 159).

 Véase Exposición de Motivos de la Ley Núm. 190-1996, supra.